UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-62548-CIV-DIMITROULEAS

RICHARD NIELSEN, individually and as
Personal Representative of the
Estate of Cindy Nielsen, Decedent,

    Plaintiff,

vs.

MSC CROCIERE, S.A., and MSC Cruises (USA), Inc.,

    Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**

    THIS CAUSE is before the Court upon Defendant MSC Cruises (USA). Inc.'s Motion to Dismiss [DE 10], filed herein on May 18, 2011, Defendant MSC Crociere S.A.'s Motion to Dismiss [DE 11], filed herein on May 24, 2011, and Plaintiff Richard Nielsen's Motion for Hearing [DE 16], filed herein on June 21, 2011.  The Court has carefully considered the Motions, Plaintiff's Responses [DE's 12, 13], Defendants' Replies [DE's 14, 15], and is otherwise fully advised in the premises.

**I.  BACKGROUND**

    Plaintiff Richard Nielsen, individually and as personal representative of the estate of Cindy Nielsen ("Plaintiff") commenced the instant action on December 29, 2010 [DE 1], and filed an Amended Complaint on April 26, 2011. [DE 5].

    According to the Amended Complaint, this is an action for wrongful death that arose on

1

an excursion which was alleged to have been provided, organized, promoted, advertised, and vouched for by the Defendants for the cruise passengers of the cruise ship MSC Poesia. Comp. ¶ 13. Plaintiff alleges that Plaintiff and Decedent, Cindy Nielsen, were passengers onboard the cruise ship MSC Poesia, which at the time of the subject incident was owned and/or operated by the Defendants MSC Crociere S.A. and MSC Cruises (USA), Inc. Comp. ¶ 5.

On and before the date of the incident, December 30, 2009, Defendants promoted, sold, vouched for, and/or recommended a scuba diving excursion to the Decedent, and her husband, Plaintiff. ¶ 15. The cruise ship at all times material to the Amended Complaint was in navigable waters. ¶ 16. The cruise excursion on which the incident occurred was part and parcel of the cruise and the cruise experience and took place in Grand Cayman, Cayman Islands. ¶ 16.

Plaintiff alleges that Defendants had a duty "to provide and maintain a safe, secure, and worry free scuba diving excursion and experience and to inspect the scuba diving excursion, its operators, participants, weather and other conditions and equipment" based upon Defendants' representations to the public and to their passengers onboard the ship, as well as Defendants' relationship with the shore excursion operator, Resort Sports, Ltd. ¶ 17-27. Plaintiff also alleges that Defendants violated their duties to provide a reasonably safe excursion by failing to provide for their passengers an emergency evacuation plan or a plan to receive emergency medical care and/or treatment for injuries received on the excursion which Defendant knew included diving off a boat into deep waters. ¶ 28. The scuba diving excursion in Grand Cayman, Cayman Islands which Defendants provided, organized, promoted, advertised, and vouched for, negligently employed a company with an ill-equipped vessel, old diving equipment, and an insufficient number of properly trained instructors, which instructors did not follow industry guideline

regulations for the excursion. ¶ 29.

Decedent had been diving at a depth of over approximately over 60 feet for approximately over 15 minutes when she was found unconscious by her husband, Richard Nielsen. ¶ 32. Mr. Nielsen was compelled to personally bring her to the surface and he attempted to save her life. ¶ 32. There was no Automated External Defibrillator (AED) on the boat and instead only a small first aid kit and, furthermore, there were no instructors present to aid Decedent. ¶ 32. As a result, Cindy Nielsen was pronounced dead after she arrived at the hospital. ¶ 32.

Plaintiff asserts five counts[1] against Defendants, as follows: Count I - Negligence; Count II - Negligent Selection and Supervision; Count III - Negligent Misrepresentation; Count IV - Apparent Agency; and Count V - Negligent Infliction of Emotional Distress.

## II. DISCUSSION

### A. Motion to Dismiss Standard

Until the Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), courts routinely followed the rule that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). However, pursuant to Twombly, to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

---

[1] Plaintiff alleges, and Defendants agree, that his causes of action arise under maritime law. See Comp. ¶¶ 2, 36, 37; [DE 10 at 3-4]; [DE 11 at 3-4].

550 U.S. at 555. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Taking the facts as true, a court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993). In Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009), the Supreme Court further stated that a court need not accept legal conclusions as true, but only well-pleaded factual allegations are entitled to an assumption of truth.

**B.      Defendants' Motion to Dismiss**

Defendants filed the instant Motions on May 18, 2011 [DE 10] and May 24, 2011 [DE 11], arguing that the Amended Complaint should be dismissed for failure to state claim upon which relief can be granted because (1) Plaintiff's negligence claim improperly attempts to expand the duty imposed by general maritime law; (2) Plaintiff fails to plead the prima facie elements of a negligent selection claim; (3) Plaintiff fails to allege actionable misrepresentations and fails to plead a claim for misrepresentation with the requisite particularity; (4) the Amended Complaint contains inconsistent allegations that are fatal to Plaintiff's apparent agency claim; and (5) Plaintiff cannot recover for negligent infliction of emotional distress because he does not allege that he was ever placed in immediate risk of physical harm. Additionally, Defendants argue that, as the subject incident occurred in waters off of the Cayman Islands, the Death on the High Seas Act, 46 U.S.C.S. 30302 ("DOHSA") provides Plaintiff's sole and exclusive remedy. Accordingly, Defendants also move to dismiss the Amended Complaint to the extent it seeks

damages that are not permitted under DOHSA.

        (1)       *The Death on the High Seas Act, 46 U.S.C.S. 30302 ("DOHSA") provides Plaintiff's exclusive remedy*

Defendants argue that, as the subject incident occurred in waters off of the Cayman Islands, the Death on the High Seas Act, 46 U.S.C.S. 30302 ("DOHSA") provides Plaintiff's sole and exclusive remedy. This statute provides as follows:

> When the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible. The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative.

46 U.S.C.S. 30302. "[T]he prevailing rule in this Circuit, consistent with rulings in numerous courts outside of this Circuit, is that maritime incidents occurring within the territorial waters of foreign states fall within the ambit of DOHSA." Moyer v. Rederi, 645 F.Supp. 620, 623 (S.D. Fla. 1986). (citing Sanchez v. Loffland Brothers Company, 626 F.2d 1228 (5th Cir. 1980), cert. denied, 452 U.S. 962 (1981)[2].

In Response, Plaintiff concedes that DOHSA applies to limit his claims. Accordingly, Plaintiff <u>withdraws</u> his damage claims for nonpecuniary damages, including pre-death pain and suffering, with respect to Decedent's death. Plaintiff further concedes that damages under Florida's Wrongful Death Statute are preempted by DOHSA and thus not available to Plaintiff and also withdraws his damage claims for such. Additionally, Plaintiff concedes that loss of

---

[2] The Eleventh Circuit, in Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

consortium is unavailable under general maritime law.

However, Plaintiff maintains that loss to the Decedent's children of the nurture, instruction, and physical, intellectual, and moral training that they would have received from Decedent, but for her alleged wrongful death, as well as loss of services of the Decedent, constitute a pecuniary loss and are recoverable elements of damages under DOHSA. Plaintiff relies upon Higginbotham v. Mobil Oil Corp., 360 F.Supp. 1140 (W.D. La. 1973), which held that recovery of pecuniary damages is allowable for "loss of services to the family" and "privation of parental nurture and guidance to a minor child" under DOSHA and general maritime law.

In Reply, Defendants do not dispute that recovery of pecuniary damages under DOSHA includes loss to children of the nurture, instruction, and physical, intellectual, and moral training that they would have received from Decedent, as well as loss of services of the Decedent.

Accordingly, Plaintiff's claims for nonpecuniary damages, including pre-death pain and suffering and loss of consortium shall be dismissed with prejudice.


*(2) Whether Plaintiff's Negligence claim (Count I) improperly attempts to expand the duty imposed by general maritime law*

In the instant Motion, Defendants argue that Plaintiff's negligence claim (Count I) improperly attempts to expand the duty imposed by general maritime law; therefore, Defendants request that the Court "dismiss the Plaintiff's Negligence claim to the extent that it seeks to expand [Defendants'] duties beyond the duties that the law imposes on shipowners." [DE 10 at 10; DE 11 at 9].

To state a cause of action for negligence under maritime law, the plaintiff must allege: (1) that defendant owed plaintiff a duty; (2) that defendant breached that duty; (3) that this breach was the proximate cause of plaintiff's injury; and (4) that plaintiff suffered damages. <u>Isbell v. Carnival Corp.</u>, 462 F.Supp.2d 1232, 1236 (S.D. Fla. 2006). The duty of care owed by a the owner of a ship in navigable waters while its passengers are on board the vessel is a duty of exercising reasonable care under the circumstances. <u>Kermarec v. Compagnie Generale Transatlantique</u>, 358 U.S. 625, 632 (1959); <u>Everett v. Carnival Cruise Lines</u>, 912 F.2d 1355, 1358 (11th Cir. 1990). Additionally, under general maritime law, the duty a cruise line owes to its passengers beyond the port is to warn of dangers "which the carrier knows, or reasonably should have known." <u>Carlisle v. Ulysses Line Ltd., S.A.</u>, 475 So.2d 248, 251 (Fla. 3d DCA 1985). The duty to warn extends to places the cruise passengers are expected to visit. <u>Id.</u> at 251; <u>Belik v. Carlson Travel Group, Inc.</u>, 2011 WL 2221224, *5 (S.D. Fla. June 06, 2011) (holding that cruise passenger sufficiently pled negligence claim for failure to warn of the dangers of an off-cruise excursion).

Here, the negligence claim is predicated on a laundry list of duties Defendants allegedly owed to Plaintiff. <u>See</u> Comp. ¶ 44. Specifically, Plaintiff alleges:

    a.    Failing to provide adequate warning of the dangerous conditions of scuba diving;

    b.    Failing to choose excursion operators that were adequately licensed, trained and qualified to provide a safe excursion for its passengers;

    c.    Failing to make good on its representations on which it knew passengers would rely for this dangerous scuba diving excursion, promises and representations made in its literature, in its videos, online, and at the excursion desk and otherwise;

    d.    Failing to inspect the equipment including but not necessarily limited to scuba tanks, regulators, vests, hoses and related equipment used in the Georgetown,

    Grand Cayman, Cayman Islands scuba excursion on a regular basis to determine its safety and reliability;

e. Failing to inspect the personnel and the procedures used not only to hire but also to train and maintain safety of the Georgetown, Grand Cayman, Cayman Islands scuba diving excursion;

f. Failing to check out thoroughly the Georgetown, Grand Cayman, Cayman Islands scuba diving excursion either initially and/or any regular basis;

g. Failing to properly train the excursion desk personnel on determining the safety of the Georgetown, Grand Cayman, Cayman Islands scuba diving excursion;

h. Failing to prevent passengers from going on such an excursion under dangerous conditions, including but not necessarily limited to namely those using old and/or improperly maintained equipment, untrained and/or improperly trained personnel, unsupervised personnel and/or insufficient numbers of personnel who work at the Georgetown, Grand Cayman, Cayman Islands scuba excursion and/or who did not follow proper scuba diving safety protocols and procedures;

i. Observing that MSC passengers were allowed to participate in the subject excursion where unreasonably dangerous conditions existed and failing to prevent or stop such participation;

j. Failing to otherwise warn anyone including the Plaintiff, Decedent, their family and traveling companions who participated in the subject excursion of the dangerous conditions;

k. Failing to properly and reasonably train its employees in the proper methods of monitoring the activities of people on the Georgetown, Grand Cayman, Cayman Islands scuba excursion, and posting warning notices of such dangers;

l. Failing to properly and reasonably monitor and control the activities of people in an area, especially an area where the cruise line knows is an area of dangerous conditions;

m. Failing to arrange excursions in safe and appropriate conditions;

n. Failing to implement a method of operation which was reasonable and safe and would prevent dangerous conditions such as the one in this case and utilizing or allowing negligent method of operations;

o. Allowing ongoing, recurring, continuous and/or repetitive problems to occur or to

    remain which would cause incidents or injuries;

 p. Representing to passengers including the Decedent herein that the Georgetown, Grand Cayman, Cayman Islands scuba excursion was safe, reliable, and fully and properly licensed;

 q. Failing to monitor excursion operators, their management, personnel, training, methods of operation, and equipment;

 r. Failing to properly train excursion operators, their management and their personnel;

 s. Failing to promulgate and enforce appropriate safety rules for excursion operators;

 t. Failing to provide a plan for emergency medical evacuation and/or emergency medical treatment from if an incident of this type on an MSC excursion occurred; and/or

 u. Failing to provide emergency medical treatment and/or evacuation of MSC passengers if an emergency medical situation occurred at an MSC excursion such as the one in this case.

Comp. ¶ 48. Defendants suggest that "Plaintiff seeks to hold [Defendants] liable for at least 21 different alleged acts or omissions by [Defendants], including failing to inspect scuba equipment, failing to train the excursion operator, and failing to promulgate safety rules for the excursion operator. Shipowners do not have a duty to passengers to perform any of these acts." [DE 10 at 9; DE 11 at 9]. Therefore, Defendants argue that the Court should dismiss the negligence claim "to the extent that it seeks to expand USA's duties beyond the duties that the law imposes on shipowners." Defendants do not argue specifically which alleged duties (a)-(u) should be eliminated and which should remain.

   In Response, Plaintiff argues that under either of its alternative alleged theories against Defendant, as permitted by Federal Rule of Civil Procedure 8(d)(2), its negligence count is well-pled. Plaintiff has alleged that Defendants had an agency relationship with the scuba excursion

operator (either actual or apparent) or, alternatively, that the excursion operations and Defendants were partners. In support of these theories, Plaintiff points to several of the allegations of the Amended Complaint regarding Defendants' relationship to the excursion *vis a vis* the passengers. Plaintiff contends that the Defendant's own ticket and actions support the first two alternative theories: one who reads Defendants' own ticket would reasonably conclude that the scuba excursion operator was, minimally, an agent of the Defendants, since paragraphs 16 and 17 of the ticket only identify independent contractors as shipboard medical personnel, shipboard spa personnel such as manicurists and fitness instructors, shipboard photographers, shipboard shopkeepers, shipboard auctioneers, operators of hotel accommodations and *operators of transportation* to and from Shore Excursions. See Comp. ¶ 20. The Complaint also alleges that Defendants promote the excursions, advertise them, list them, photograph them, represent that they are part of the cruise experience, allow and encourage payment of them onboard, provide an excursion desk with "advisors" about excursions, issue "Shore Excursion tickets" for the excursion with the MSC logo onboard at the excursion desk, charge these tickets to the passenger's cabin, organize their passengers to go on each excursion, specify assembly points for excursions and take passengers to the excursion. ¶ 19. Plaintiff also alleges that Defendants take in and keep a large portion of the excursion revenue. ¶ 18. Under the partnership or agency theories, Plaintiff seeks to hold Defendants liable for negligence as to all of the twenty-one alleged duties of care. See, e.g., Huntley v. Carnival Corp., 307 F.Supp.2d 1372 (S.D. Fla. 2004) (cruise ship passenger's complaint sufficiently pled to support claims for direct liability against cruise line for its alleged negligence). Alternatively, Plaintiff alleges that the shore excursion operators were independent contractors. Under the latter theory of liability, Plaintiff concedes

that Defendant's negligence liability would be limited to the duty a cruise line owes to its passengers under general maritime law, and would not include all of the twenty-one enumerated acts of negligence alleged. [DE 13 at 7-9]. See Carlisle, 475 So.2d at 251; Belik, 2011 WL 2221224, at *5.

Accordingly, Defendants' motions to dismiss Plaintiff's negligence claim (Count I) is due to be denied. Defendants recognize that the negligence claim cannot be dismissed in its entirety, but rather they seek to narrow the scope of the alleged duties. See [DE 14 at 10; DE 15 at 10]. As explained supra, which alleged duties may ultimately apply to Defendants will depend on which theories of liability (i.e., partnership, agency – actual or apparent, common carrier liability) that Plaintiff is able to prove. However, as Plaintiff's negligence claim survives the motion to dismiss stage, which of the alleged twenty-one duties enumerated duties Defendants allegedly owed to Plaintiff is better decided upon a motion in limine.

*(3)    Plaintiff's negligent selection and supervision claim (Count II)*

Count II of Plaintiff's Amended Complaint alleges that Defendants were negligent in their selection and supervision of the shore excursion operator. [DE 5, Count II]. Defendants argue that Plaintiff fails to plead the prima facie elements of a negligent selection claim or a negligent supervision claim.

Cruise ship owners may held liable in a maritime action for negligently hiring or retaining an independent contractor. Smolnikar v. Royal Caribbean Cruises Ltd., 2011 WL 2066768, *8 (S.D. Fla. May 10, 2011). A prima facie case for negligent selection must allege that "(1) the contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably

should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury" Id. (quoting Davies v. Commercial Metals Co., 46 So.3d 71, 73–74 (Fla. 5th DCA 2010). Negligent hiring occurs when the employer knew or should have known of the unfitness prior to the time of the hiring, and the issue of liability focuses on the adequacy of the pre-employment background investigation. Stires v. Carnival Corp., 243 F.Supp.2d 1313, 1318 (M.D. Fla. 2002) (holding that plaintiff stated cause of action for negligent hiring or retention where plaintiff alleged that the cruise ship knew of the harmful propensities of the prospective employee).

Upon a review of Plaintiff's allegations, the Court concludes that Plaintiff sufficiently sets forth a negligent selection claim. First, Plaintiff has extensively alleged throughout the Amended Complaint that the shore excursion operator was not competent. Next, Plaintiff states plausible allegations to show that Defendants did not perform an adequate background investigation of the shore excursion operator's competence prior to contracting with it, and had it done so, should have known the shore excursion was unfit. See ¶¶ 27, 58, 59, 64. Lastly, Plaintiff has sufficiently alleged that the shore excursion operator's unfitness was the proximate cause of the Decedent's death. See, e.g., ¶ 32. Accordingly, Defendants' motions to dismiss Plaintiff's negligent selection claim is due to be denied.

The principal difference between negligent hiring and negligent retention as bases for employer liability is the time at which the employer is charged with knowledge of the employee's unfitness. Garcia v. Duffy, 492 So.2d 435, 438 (Fla. 2d DCA 1986). A negligent monitoring or supervision claim occurs when, during the course of employment, the employer becomes aware or should have become aware of problems indicating his unfitness, and the employer fails to take

further action, including investigating or discharge. Id. at 438-39. Here, Plaintiff alleges that Defendants failed to monitor the excursion operator and, moreover, that during the course of the relationship between Defendants and the excursion operator, Defendants were aware of the dangerous conditions created by the operator's unfitness yet failed to stop participation of its passengers in the subject excursion. ¶ 64. Plaintiff alleges that, in the face of such knowledge, Defendants allowed ongoing, recurring, continuous or repetitive problems to remain which would cause injuries. ¶ 64. Additionally, Plaintiff alleges that Defendants concealed evidence of similar scuba related deaths involving the subject resort operator, including death of a patron merely three weeks prior to Decedent's death. ¶ 64. Accordingly, the Court finds that Plaintiff has sufficiently alleged a plausible claim for negligent supervision or retention. Accordingly, Defendants' motions to dismiss such claim is due to be denied.

### (4) Plaintiff's negligent misrepresentation claim (Count III)

Count III of Plaintiff's Amended Complaint seeks to recover damages for alleged misrepresentations made by Defendants. [DE 5]. Defendants argue that Plaintiff fails to allege actionable misrepresentations and fails to plead the claim with the requisite particularity.

To state a negligent misrepresentation claim under Florida law, a plaintiff must allege the following:

> (1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation.

Holguin v. Celebrity Cruises, Inc., 2010 WL 1837808, *1 (S.D. Fla. May 4, 2010); Fojtasek v.

13

NCL (Bahamas) Ltd., 613 F.Supp.2d 1351, 1355 (S.D. Fla. 2009).

In the instant case, Plaintiff's negligent misrepresentation claim is based upon general assertions that Defendants represented to the passengers the subject shore excursion was safe and reliable. Defendants argue that the claim must be dismissed because general statements regarding the safety of shore excursions are insufficient to support a negligent misrepresentation claim as a matter of law. The Court agrees. See Isbell, 462 F.Supp.2d at 1237 (allegations of general statements by shipowner that the excursion was safe insufficient to sustain a negligence claim); Balaschak v. Celebrity Cruises, Inc., No. 09-21196- civ-Altonaga, at *11 (S.D. Fla. Sept. 14, 2009) ("Consistent with Isbell and the cases cited therein, Count III fails to state a claim on which relief can be granted to the extent the "misrepresentation of material fact" is that the excursion was "safe.").

Accordingly, Plaintiff's claim for negligent misrepresentation (Count III) shall be dismissed for failure to allege an actionable misrepresentation. In the event that Plaintiff attempts to re-plead this claim, Plaintiff is reminded that, because a negligent misrepresentation is considered "tantamount" to fraud, a such a claim must be pled with particularity under Rule 9(b). See, e.g., Holguin, 2010 WL 1837808, at *2.

*(5)    Plaintiff's apparent agency claim (Count IV)*

Defendants argue that Plaintiff's Apparent Agency claim (Count IV) is insufficient as a matter of law. A court sitting in admiralty may adjudicate claims based upon a theory of apparent agency. Smolnikar, 2011 WL 2066768, at *13; Hajtman v. NCL (Bahamas) Ltd., 526 F.Supp.2d 1324, 1328 (S.D. Fla. 2007).

> Apparent Agency will be established when: 1) the alleged principal makes some sort of manifestation causing a third party to believe that the alleged agent had authority to act for the benefit of the principal, 2) that such belief was reasonable and 3) that the claimant reasonably acted on such belief to his detriment.

Id. at 1328 (quoting Doonan v. Carnival Corporation, 404 F.Supp.2d 1367, 1371 (2005)).

Here, Defendants contend that the Amended Complaint contains inconsistent allegations that are fatal to Plaintiff's apparent agency claim. The Court disagrees. As a matter of law, Rule 8 of the Federal Rules of Civil Procedure expressly permits inconsistent pleadings.[3] "[I]nconsistent factual allegations must be explicitly pled in the alternative." Here, the allegations of paragraphs 17(c) and (d) state as follows:

> c. Unbeknownst to Plaintiff and Decedent, MSC had an agency relationship with the shore excursion operator, Resort Sports, Ltd.;
>
> d. *Additionally and/or alternatively*, unbeknownst to Plaintiff and Decedent, MSC is a partner of the shore excursion operator, Resort Sports, Ltd.;

¶¶ 17(c), (d) (emphasis added). In paragraphs 83 and 84, Plaintiff again explicitly alleges "[a]dditionally and/or alternatively" that the scuba excursion operator was Defendants' apparent agent. The Court finds that, at this stage of the litigation, Plaintiff has properly explicitly pled inconsistent allegations in the alternative. The case of Maloney v. Scottsdale Ins. Co., 256 Fed.Appx. 29 (9th Cir. 2007), relied upon by Defendants, is distinguishable, as "[t]he inconsistent

---

[3] Rule 8(d) Pleading to Be Concise and Direct; Alternative Statements; Inconsistency
. . .
(2) Alternative Statements of a Claim or Defense. A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

(3) Inconsistent Claims or Defenses. A party may state as many separate claims or defenses as it has, regardless of consistency.

allegations in [that] complaint, however, were not pleaded in the alternative." Id. at 31. Accordingly, Defendants' motion to dismiss the apparent agency claim (Count IV) shall be denied.

### (6) Actual Agency or Partnership

Defendants move to dismiss the Amended Complaint to the extent that it seeks to hold them liable under theories of actual agency or partnership. Defendants contend that Plaintiff failed to "offer more than unsupported legal conclusions" to support these theories. [DE 10 at 15; DE 11 at 15]. Defendants cite cases in which the court held that the plaintiffs had not properly pled personal jurisdiction over the shore excursion operators. See Holguin; Ellis v. Celebrity Cruises, Inc., 2010 WL 6730808 (S.D. Fla., July 19, 2010). While Defendants are correct that a mere failure to deny an agency relationship cannot, as a matter of law, support a claim for agency, see Bridgewater v. Carnival Corp., 2011 WL 817936 (S.D. Fla., March 2, 2011), Plaintiff here has alleged more than a mere failure to deny. Rather, Plaintiff has alleged that Defendants explicitly identified an exhaustive list of independent contractors on the passengers' ticket contract, and did not include shore excursion operators in that list, even though it did include "operators of transportation to and from Shore Excursions" in that detailed list of independent contractors. Additionally, Plaintiff has alleged plausible facts supporting Plaintiff's theory that Defendants were the operators of or the agents of the operators of the shore excursion. See, e.g. Comp. ¶¶ 13-26. Accordingly, the motion to dismiss allegations of the Amended Complaint relating to these alternatively alleged theories of liability is due to be denied.

### (7) Plaintiff's negligent infliction of emotional distress claim (Count V)

Lastly, Defendants argue that Plaintiff cannot recover for Negligent Infliction of Emotional Distress (Count V) because he does not allege that he was ever placed in immediate risk of physical harm.

Courts use the "zone of danger" test in determining whether a claim exists for negligent infliction of emotional distress. Hutton v. Norwegian Cruise Line Ltd., 144 F.Supp.2d 1325, 1327–28 (S.D. Fla. 2001); Williams v. Carnival Cruise Lines, Inc., 907 F.Supp. 403, 405 (S.D. Fla. 1995). The zone of danger test has been incorporated into maritime law See Tassinari v. Key West Water Tours, L.C., 480 F.Supp.2d 1318, 1320-21 (S.D. Fla. 2007) ("[C]ourts have analogized the remedial nature of FELA [Federal Employers' Liability Act], to maritime law and have used the same zone of danger test and similar reasoning to evaluate negligent infliction of emotional distress claims under general maritime law."); see also Smith v. Carnival Corp., 584 F. Supp. 2d 1343, 1354 (S.D. Fla. 2008) ("admiralty law allows recovery only for those passing the zone of danger test"). This test allows a plaintiff to recover for "emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct," and/or for a plaintiff to recover "without a physical impact directly from the defendant's conduct, if the plaintiffs were 'placed in immediate risk of physical harm by that conduct.'" Id. (quoting Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 549 (1994).

Defendants contend that this case is similar to that of Smith v. Carnival Corp., 584 F. Supp. 2d 1343 (S.D. Fla. 2008), in which the Court held that decedent's daughters' claim for negligent infliction of emotional distress, based on emotional distress that they suffered personally from witnessing their mother's drowning during a snorkel trip excursion while a

passenger on a cruise, failed to satisfy the zone of danger test. See id. at 1355 ("Plaintiffs have not alleged any facts indicating that [decedent's] daughters were in the zone of danger."). Likewise, Defendants argue, Plaintiff here has failed to state a claim as a matter of law because he does not allege that he suffered a physical impact or was ever placed in immediate risk of physical harm.[4]

In Response, Plaintiff argues that his allegations meet the zone of danger test because he has alleged that he sustained a physical impact as a result of a Defendant's negligent conduct and he was placed in immediate risk of physical harm by that conduct. That is, Plaintiff contends that his allegations satisfy both prongs of the zone of danger test when only one prong needs to be met.

As for the issue of physical impact, Plaintiff points to the following allegations:

| | |
|---|---|
| Paragraph 32: | Plaintiff personally brought decedent to the surface and attempted to save her; |
| Paragraphs 96, 97: | Decedent died in Plaintiff's arms; |
| Paragraphs 98, 99: | Plaintiff suffered psychological trauma that has manifested in the form of physical symptoms which required hospitalization. |

[DE 5 at ¶¶ 32, 96, 97, 98, 99].

Upon review of these allegations, the Court concludes that they do not meet the physical impact prong of the zone of danger test, which contemplates a physical impact that caused, or

---

[4] Defendants also argue that they expressly limited Plaintiff from recovering for emotional distress under the terms of Plaintiff's ticket. The Court rejects this argument, as it is well settled that a common carrier is prohibited from contractually limiting liability for its own negligence. Smolnikar, 2011 WL 2066768, at *6.

might have caused, physical harm. See Metro-North Commuter R. Co. v. Buckley, 521 U.S. 424, (1997) (explaining that "physical impact" requirement does not compass every form of physical contact).

The Court also finds that Plaintiff's allegations do not meet the alternative prong of the zone of danger test regarding the issue of being placed in immediate risk of physical harm by Defendant's negligent conduct. In Consolidated Rail, 512 U.S. at 556, the Supreme Court explained that under the zone of danger test, a plaintiff who does not meet the physical impact prong is still "able to recover for emotional injury *caused* by fear of physical injury to himself." (emphasis added). See id. ("We see no reason, however, to allow an employer to escape liability for emotional injury caused by the apprehension of physical impact simply because of the fortuity that the impact did not occur."). Here, however, the Amended Complaint alleges that Plaintiff suffered emotional distress resulting in damages as a result of witnessing his wife's death. ¶ 98. It does not allege that his emotional distress was caused by fear of physical injury to himself.

Accordingly, Plaintiff's claim for negligent infliction of emotional distress (Count V) shall be dismissed for failure to allege sufficient facts to meet the zone of danger test.

### III. CONCLUSION

Based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant MSC Cruises (USA). Inc.'s Motion to Dismiss [DE 10] and Defendant MSC Crociere S.A.'s Motion to Dismiss [DE 11] are hereby **GRANTED IN PART AND DENIED IN PART**;

2. Plaintiff's claims for nonpecuniary damages, including pre-death pain and suffering and loss of consortium are hereby dismissed with prejudice;

3. Plaintiff's claims for negligent misrepresentation (Count III) and negligent infliction of emotional distress (Count V) are hereby dismissed with leave to amend;

4. The remainder of the relief requested in Defendants' motions is hereby denied;

5. Plaintiff is hereby granted leave to file, within fourteen (14) days of the date of this Order, a Second Amended Complaint in accordance with this Order;

6. Plaintiff's Motion for Hearing [DE 16] is hereby **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 24th day of June, 2011.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Counsel of record